UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE SEARCH OF
CELLULAR DEVICES

Case No. 22mj1079 (MEG)

**AFFIDAVIT**

I, Nathaniel May, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of applications for search warrants for multiple cellular telephones that are currently in law enforcement possession as of November 29, 2022. The cellular telephones (collectively referred to as the "Target Telephones") are described in Attachment A, incorporated herein, and as follows:

    a. One black Samsung phone (Target Device-1);

    b. One black iPhone (Target Device-2);

    c. One black Samsung phone (Target Device-3);

    d. One black Samsung phone (Target Device-4);

    e. One blue Motorola phone (Target Device-5); and

    f. One green iPhone (Target Device-6).

2. I respectfully submit that there is probable cause to believe that the Target Telephones will contain evidence that Donald Hill and others have committed violations of federal law, including possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1); conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846;

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and unlawful possession of a firearm/ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (hereafter collectively referred to as the "Target Offenses").

3. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18.

4. Prior to my employment with ATF, I worked as a licensed professional fire protection engineer for West Coast Code Consultants, Inc. for two years. I graduated from the University of Maryland in December 2015 with my Bachelor of Science Degree and May 2017 with my Master of Science Degree, both in Fire Protection Engineering.

5. I have been employed by ATF as a Special Agent since June 2021. I have completed the Criminal Investigator Training Program (CITP) and the ATF Special Agent Basic Training program (SABT), both of which are conducted at the Federal Law Enforcement Training Center (FLETC) in Glynn County, Georgia. I have received specialized training in firearms identification and the investigation of firearms-related offenses. As a result of my training and experience as an ATF Agent, I am familiar with federal firearm and ammunition laws. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of drugs and crimes of violence; and the use of firearms in the commission of violent acts. I have received training, both formal and on-the-job, in the provisions of the federal firearms and drug laws administered under Titles 18, 21 and 26 of the

United States Code. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts. I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs.

6. From my experience and training, I know that firearm traffickers and narcotics traffickers often use cellular telephones, and often speak to one another using coded, cryptic or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their firearms, drugs, and/or assets. As a result of my training and experience, I have become familiar with various coded terminology that is common to trafficking of firearms and narcotics. I know that drug traffickers often use multiple phones to facilitate their illegal activities. Drug traffickers will utilize multiple phones to conceal their identities as well as to separate customers and source of supply. Drug traffickers will frequently change cellular devices and cellular numbers to avoid detection by law enforcement. I also know that traffickers frequently use cellular telephones subscribed to by other persons and pre-paid cellular telephones that require the purchaser to provide little or no identifying information to purchase, activate and utilize, all of which is done to avoid detection and thwart the efforts of law enforcement

7. Based on my training, experience, I am well-versed regarding the means and methods used by persons involved in the use, possession, transportation, illegal sale of firearms and narcotics as well as the motivation of such persons involved in these crimes, and the methods utilized to facilitate firearm and narcotics trafficking. Based on my training, experience, I know

that those engaged in criminal conduct, such as firearm and narcotics trafficking, will often have photographs, slides, or video movies of themselves, their co-conspirators, contraband, and assets purchased with illegal proceeds. These photographs and video movies are normally in the trafficker's possession or residence or are frequently stored electronically on wireless telephones, i-Pads, computers, and other electronic devices. I also know that individuals engaged in criminal conduct will utilize their phones and various phone related features and applications, such as messenger and text messaging, to contact each other and arrange criminal conduct. Such individuals frequently store the contact information for criminal associates in their phones, often under an alias. Individuals engaging in criminal conduct will also access internet-based applications such as Facebook, in furtherance of their illegal activities. Such individuals will also utilize their phones' GPS or location services to arrange meetings and to find meet locations for the purpose of conduct illegal activities and transactions.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is probable cause for the requested warrants and does not set forth all my knowledge about this matter.

## Probable Cause

9. On November 29, 2022, members of the Waterbury Police Department (WPD) were patrolling in response to multiple recent shots fired incidents. Officers observed a white 2019 Infiniti traveling at a slow rate of speed on Englewood Avenue in Waterbury, Connecticut. An officer observed the driver, later identified as Donald Hill, to appear extremely nervous and, upon observing the officer's cruiser, Hill quickly lowered his body further into his seat. The officers noted such behavior because, based on training and experience, the behavior was consistent with those

attempting to conceal themselves from police view because they are engaged in criminal activity such as narcotics possession and/or firearm possession. Hill also began to operate his vehicle in a careless manner, striking the driver's side mirror on a parked vehicle on Englewood Avenue. Hill did not stop his vehicle after the collision. Law enforcement activated their emergency lights to conduct a motor vehicle stop. Hill, however, ignored the lights and began to accelerate his vehicle.

10. When an officer attempted to stop Hill from driving further by pulling his police vehicle in front of Hill's Infiniti, Hill reversed the Infiniti and struck the driver's side area of the police cruiser behind him. After the officer in front of Hill's Infiniti accelerated forward into Hill's Infiniti, the officers were able to forcibly stop Hill's Infiniti.

11. Officers then approached the Infiniti. Because the Infiniti's doors were locked, officers sought to gain entry by attempting to break the front driver and passenger windows with flashlights. While attempting to gain access to the vehicle, an officer observed Hill place a firearm on the front passenger seat. Hill thereafter continued to ignore police commands to unlock the vehicle's doors. Once officers were able to enter the vehicle by opening the driver's side door, Hill continued to resist getting out of the car even after an officer grabbed his wrist to prevent him from gaining access to the firearm in the vehicle. After officers were able to pull Hill from the vehicle, he was taken into custody without further incident.[1]

12. Officers recovered the following evidence from the vehicle:

   a. A Smith and Wesson M&P9 firearm with an obliterated serial number containing a magazine with live rounds and one bullet chambered (front passenger seat);

---

[1] Hill was offered medical attention, which he refused.

b. Target Device-1, Target Device-2, approximately $220.00 (driver's side door panel);

c. Three clear knotted bags each containing a white rock like substance consistent with crack cocaine, gross weight 10.8 grams; approximately $2,269.00; a digital scale with white powder residue (center console area);

d. Pink shopping bag (on rear passenger seat) containing:

   i. approximately 40 white glassine baggies, each stamped "peace," and each containing a tan powder substance consistent with heroin/fentanyl;

   ii. a Ziplock bag containing multiple clear knotted bags, each containing a white rock like substance consistent with crack cocaine, gross weight 395.2 grams; and

   iii. three boxes of sandwich bags.

e. Ziplock bag containing approximately 1,600 white glassine bags, each containing a tan powder substance consistent with heroin/fentanyl (rear passenger side floor);

f. A black satchel (on rear driver's side seat) containing:

   i. A Ziplock bag containing three live 9mm rounds of ammunition;

   ii. Target Device-3, Target Device-4, Target Device-5, Target Device-6; and

   iii. A wallet with an ID belonging to an individual identified herein as "J.B.".

g. Three Ziplock bags each containing a white rock like substance consistent with crack cocaine, gross weight 198.8 grams (rear passenger floor).

13. Field tests were conducted on several of the suspected narcotics and such tests returned positive reactions indicating the presence of fentanyl or cocaine.

14. A preliminary nexus analysis indicates that the firearm seized was manufactured outside Connecticut.

15. On December 8, 2022, law enforcement traveled to J.B.'s residence and spoke with his mother. She reported that J.B. was at school.[2] When asked about J.B.'s identification, she reported that J.B. had lost his wallet after it fell out of his pants pocket approximately two months prior to the recovery. His mother denied any knowledge of criminal activity involving J.B.

16. Later that day on December 8, 2022, law enforcement spoke with J.B. over the phone. J.B. confirmed that he had lost his brown wallet on or about October 22, 2022, in Waterbury, Connecticut. Among other items in the wallet (cash, credit and debit card, vaccination card, insurance card), J.B. stated his I.D. card was in the wallet at the time it was said to have been lost. J.B. denied knowing anyone by the name "Donald Hill."

17. Hill is a convicted felon, having been previously convicted of possession with the intent to distribute in October 2018, possession with the intent to distribute in April 2012, possession with intent to distribute in March 2012, escape in the first degree in August 2008, sale of a controlled substance in August 2008, sale of a hallucinogen/narcotic in March 2007, and weapon in a motor vehicle in October 2002. For most of these offenses, Hill was sentenced to a period of incarceration that exceeded a year. For instance, he received a thirteen-year sentence for his March 2012 distribution conviction. At the time of his arrest on November 29, 2022, Hill had outstanding warrants for an incident on October 29, 2022, which includes state charges for assault in the first degree and criminal possession of a firearm.

---

[2] J.B. recently turned 18 years old. Law enforcement was unable to identify any arrest or criminal history associated with J.B.

18. Based on the foregoing, there is probable cause to believe, and I do believe, that Donald Hill and others may be engaged in unlawful activities, specifically narcotics distribution and unlawful firearm/ammunition possession, and that the Target Devices will contain evidence of the Target Offenses. The Infiniti contained evidence of narcotics trafficking, including fentanyl/heroin and crack cocaine. Hill was the only operator of the vehicle. Further, once aware of police presence, Hill fled. Although J.B.'s identification was in the back seat of the vehicle, his wallet was lost over a month prior to the traffic stop. Additionally, J.B.'s identification was stored with 9mm ammunition, which could have been fired by the firearm Hill possessed, along with four of the six cellular telephones. These items, like Hill and his firearm, were near the narcotics in the vehicle. The other two cellular devices were in the driver's side door panel and thus near Hill at the time of his arrest. From my training and experience, I know that drug traffickers often use phones to facilitate their illegal activities. Drug traffickers will utilize multiple phones to conceal their identities as well as to separate customers and source of supply. Drug traffickers will frequently change cellular devices and cellular numbers to avoid detection by law enforcement. Drug traffickers utilize their phones and various phone related features and applications, such as messenger and text messaging, to contact each other and arrange drug transactions. Drug traffickers often subscribe these phones in fictitious names and at fictitious addresses to conceal their identities and connection to the phones. Drug traffickers frequently store the contact information for criminal associates in their phones, often under an alias. Drug traffickers will also access internet-based applications such as Facebook, in furtherance of their trafficking activities. Drug traffickers will also utilize their phones' GPS or location services to arrange meetings and to find meet locations for the purpose of conduct narcotic transactions.

19. Drug traffickers and those in possession of firearms will frequently take videos of themselves in possession of contraband. Such videos will frequently be stored on cellular telephones and/or sent to and from respective cellular telephones. Here, the Target Telephones were located either near narcotics, narcotics proceeds, or in a vehicle, making the cellular devices readily accessible in connection to the Target Offenses if needed. Accordingly, I believe that the Target Telephones seized from the vehicle will contain evidence of their collaboration and commission of the Target Offenses. Based on my training and experience, as well as the information gathered to date, I believe that the search of the Target Telephones will lead to evidence of the Target Offenses.

### Information Regarding Cellular Telephones and the Requested Search Warrants

20. Based on my training and experience, as well as information asserted herein, there is probable cause to believe, and I do believe, that within the Target Telephones there will be found items which constitute evidence of the crimes of the Target Offenses.

21. Based on my training, experience, I also know that the Target Telephones may have some or all the capabilities that allow each phone to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system (GPS) navigation device, a hand-held radio, and a personal digital assistant (PDA). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, as well as evidence relating to co-conspirators with whom the device was in contact.

22. With regards to the Target Telephones, I request permission to search the Target Telephones for evidence relating to the Target Offenses by forensic means and/or physical review.

23. Based on my training and experience, and as set forth in this affidavit, I know wireless telephones are used by co-conspirators to communicate efforts to conduct criminal activities

and it is likely that the Target Telephones were used by the defendants to communicate with co-conspirators in the unlawful distribution of narcotics and/or firearms. Furthermore, based on my training and experience, I know that internet-browsing history in wireless phones can contain evidence of text communications between co-conspirators who distribute narcotics and/or firearms, or conspire to do so. Also based on my training and experience, I know that internet-browsing history in wireless phones can contain evidence of internet searches for locations and addresses used for storing and distributing narcotics and/or firearms. Also based on my training and experience, wireless phones may contain videos and images of co-conspirators, possible locations to ship, receive, or store narcotics and/or firearms, the quantity of narcotics and/or firearms, as well as shipping packages within which the narcotics are concealed. Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones, including phones used by those involved in the distribution of narcotics and/or firearms:

    a. the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of said telephone;

    b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

    d. any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

g. saved searches, locations, and route history in the memory of said devices;

h. internet browsing history, to include, internet searches in the memory of said device; and

i. images and videos in the memory of said device.

24. It is also requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the execution of a search warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory to preserve the data therein from being corrupted.

25. It is also requested that each warrant be deemed executed once the items listed in Attachment A have been extracted from the respective phone and that further analysis of the seized items be permitted at any time thereafter.

26. It is also requested that stored electronic information, data, information, and images contained in the Target Telephones may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device.

### Electronic Storage and Forensic Analysis of the Target Telephones

27. The warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

28. As described above and in Attachment B, the undersigned Affiant seeks permission to search and seize evidence that the Target Telephones might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

29. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things

described in Attachment B or perusing all stored information briefly to determine whether it falls within the scope of the warrant. Considering these difficulties, ATF or another law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

### Sealing

30. I request that the Court order that all papers in support of these applications, including the affidavit as the investigation remains ongoing. Disclosure before that time may jeopardize law enforcement's ability to continue the investigation and obtain further warrants, conduct arrests, or make seizures.

### Conclusion

31. I submit that this affidavit supports probable cause for warrants to search the Target Telephones described herein and in Attachment A, and to search the Target Telephones for evidence of the Target Offenses as described in Attachment B.

Respectfully submitted,

NATHANIEL MAY
Digitally signed by NATHANIEL MAY
Date: 2022.12.13 08:03:00 -05'00'

Nathaniel May, ATF SA

The truth of the foregoing affidavit has been attested to me over telephone or other reliable means on this 13 day of December 2022, at Newtline

HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to Be Searched

The cellular telephones (collectively referred to as the "Target Telephones"), which are currently in law enforcement possession following their seizure on or about November 29, 2022, are described as follows:

    a. One black Samsung phone (Target Device-1);

    b. One black iPhone (Target Device-2);

    c. One black Samsung phone (Target Device-3);

    d. One black Samsung phone (Target Device-4);

    e. One blue Motorola phone (Target Device-5); and

    f. One green iPhone (Target Device-6).

# ATTACHMENT B

## Particular Things to be Seized

1. All records presently on the Target Telephones (description in Attachment A incorporated herein), and all deleted records which are able to be recovered from each of the Target Telephone as they related to violations of federal law, specifically possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1); conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), (hereafter collectively referred to as the "Target Offenses") by Donald Hill and others including:

   a. the telephone number, ESN number, serial number, and SIM card number;
   b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory;
   c. descriptions of time, date, locations, items, or events showing the commission of, or connecting a person to, the above-described crimes;
   d. all records, however created or stored, which demonstrate ownership and use of the device;
   e. all records providing identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the device;
   f. any evidence showing the identity of the maker or user of the data and information contained in the device, such as passwords, sign-on codes, and program design;
   g. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;
   h. saved searches, locations, and route history in the memory of said devices;
   i. internet browsing history, to include, internet searches in the memory ofsaid device; and
   j. images and videos in the memory of said device;

2. It is specifically authorized that stored electronic information, data, information and images seized may be reproduced by printing, converting, or coping into storage in another device.

3. It is specifically authorized that the warrant will be deemed executed once the seized items are extracted or copied from the phone and that further analysis of the seized itemsextracted or copied from the phone is permitted at any time thereafter.